IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JERMAINE RAY GORDY, #2192339 | § | |
| VS. | § | CIVIL ACTION NO. 6:20cv380 |
| DIRECTOR, TDCJ-CID | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Petitioner Jermaine Ray Gordy, a prisoner confined at the Michael Unit within the Texas Department of Criminal Justice proceeding *pro se*, filed this petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging his Smith County conviction and sentence. The cause of action was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the petition.

For reasons explained below, the Court recommends that Petitioner Gordy's habeas petition be denied, the case be dismissed, and that Gordy be denied a certificate of appealability *sua sponte*.

**I. Procedural History**

After a jury trial, on March 13, 2018, Gordy was sentenced to life imprisonment for one count of unlawful possession of a firearm by a felon, (Dkt. #12, pg. id. #1186)—with a previous conviction for the same offense. He also pleaded "true" to two enhancement paragraphs. He filed a direct appeal, and the Sixth Court of Appeals in Texarkana, Texas, affirmed the conviction on September 19, 2018. *See Gordy v. State*, 2018 WL 4472222 (Tex. App.—Texarkana Sept. 19, 2018, pet. ref'd).

Gordy filed a state habeas application on April 13, 2018—which was dismissed because his direct appeal was pending. He filed another state habeas application, which the Texas Court of

Criminal Appeals denied on October 16, 2019, without written order on the findings of the trial court, (Dkt. #12, pg. id. #1366). Gordy filed this timely federal habeas petition on July 3, 2020.

## II. Factual Background

The state appellate court summarized the facts, which reveal that in early August 2017, a parole-violation warrant was issued for Gordy's arrest. Law enforcement received information on his whereabouts and based on that information, five officers in three unmarked vehicles staked out a residence in Tyler, Texas. The appellate court explained that:

> As the officers were waiting, Gordy and a companion, Jason McKinney, left the residence and got into a silver Honda Accord. As Gordy backed the car down a long, narrow, private driveway, one of the law enforcement officers activated his blue and red flashing lights and siren and pulled into the driveway to block Gordy's path. Gordy accelerated his vehicle and rammed the front of the law enforcement vehicle. The other two law enforcement vehicles—also flashing red and blue lights and with sirens activated—then moved to "pin" or restrict Gordy's movement.

> Officers surrounded Gordy's vehicle and ordered both occupants out of the vehicle. Neither occupant immediately complied with the officers' commands. The officers then removed McKinney and placed him in handcuffs. At the time he was handcuffed, McKinney had an empty holster on his belt.

> Gordy, however, refused to exit the vehicle. Instead, officers observed him reaching from his position in the driver's seat to the area behind the passenger's seat. The officers then began removing Gordy. After a struggle with three officers, Gordy was ultimately subdued and handcuffed as well. The officers then searched the car and found two pistols and a second holster.

> McKinney testified for Gordy. Despite the fact that he also faced a charge of felon in possession of a firearm stemming from the same incident, McKinney testified that he possessed both weapons and their holsters, not Gordy. He also claimed that he wore both pistols holstered and that, because he was wearing two shirts at the time he was arrested, he did not believe Gordy even knew he was armed.

> Chance Sanders also testified she knew Gordy and McKinney socially and that she had seen them many times. She testified that she had never seen Gordy in possession of a firearm. On the other hand, she testified that McKinney wore a holstered sidearm every time she saw him. When she was shown photographs of the pistol that officers found behind the passenger seat—that is, the one that officers testified was within Gordy's reach and that fit the holster also within his reach—Sanders said it looked "exactly like the weapon that Mr. McKinney carried." Yet, Sanders also said that McKinney's holstered weapon was

2

visible at his hip, and she admitted that it would have been unusual to see McKinney wearing two weapons at the same time.

*Gordy*, 2018 WL 4472222, at *1-2. The jury found Gordy guilty and sentenced him to life imprisonment.

## III. Gordy's Federal Claims

Gordy maintains that (1) there was insufficient evidence to support his prior convictions used to enhance his sentence; (2) there was insufficient evidence to support the underlying conviction; and (3) the improper enhancement resulted in an illegal sentence. He also claims his trial counsel was ineffective for failing to (1) object to the use of prior convictions, (2) investigate those prior convictions, (3) consult with him, (4) pursue a defense, (5) present an opening statement, (6) interview witnesses, (7) argue mitigating facts, and (8) providing poor cross examinations and closing arguments. Gordy seeks a "reverse and remand for an acquittal," (Dkt. #1, pg. 7).

## IV. Respondent's Answer

After being ordered to do so, Respondent filed an answer, (Dkt. #11), addressing Gordy's habeas petition. Respondent asserts that his habeas should be denied, as many claims are procedurally defaulted. It further argues that all of Gordy's challenges to his previous convictions are without merit. Respondent insists that Gordy failed to show that the state court's rejection of his claims was unreasonable or contrary to federal law. Gordy did not file a reply.

## V. Standard of Review

### 1. Federal Habeas Review

The role of federal courts in reviewing habeas petitions filed by state prisoners is exceedingly narrow. A prisoner seeking federal habeas corpus review must assert a violation of a federal constitutional right; federal relief is unavailable to correct errors of state constitutional,

3

statutory, or procedural law unless a federal issue is also present.  *See Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir. 1993); *see also Estelle v. McGuire*, 503 F.3d 408, 413 (5th Cir. 2007) ("We first note that 'federal habeas corpus relief does not lie for errors of state law.'") (internal citation omitted).  When reviewing state proceedings, a federal court will not act as a "super state supreme court" to review error under state law.  *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007).

Federal habeas review of state court proceedings is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996.  Under the AEDPA, which imposed several habeas corpus reforms, a petitioner who is in custody "pursuant to the judgment of a State court" is not entitled to federal habeas relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  The AEDPA imposes a "highly deferential standard for evaluating state court rulings," which demands that federal courts give state court decisions "the benefit of the doubt."  *See Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted); *see also Cardenas v. Stephens*, 820 F.3d 197, 201-02 (5th Cir. 2016) ("Federal review under the AEDPA is therefore highly deferential: The question is not whether we, in our independent judgment, believe that the state court reached the wrong result.  Rather, we ask only whether the state court's judgment was so obviously incorrect as to be an objectively unreasonable resolution of the claim.").  Given the highly deferential standard, a state court's findings of fact are entitled to a presumption of correctness and a petitioner can only overcome that burden through clear and convincing evidence.  *Reed v. Quarterman*, 504 F.3d 465, 490 (5th Cir. 2007).

*2. Ineffective Assistance of Counsel*

To show that trial counsel was ineffective, Gordy must demonstrate both deficient performance and ensuing prejudice. *See Strickland v. Washington*, 466 U.S. 668 (1984). In evaluating whether an attorney's conduct was deficient, the question becomes whether the attorney's conduct fell below an objective standard of reasonableness based on "prevailing norms of practice." *See Loden v. McCarty*, 778 F.3d 484, 494 (5th Cir. 2016).

Moreover, to establish prejudice, the petitioner must show that there is a reasonable probability that—absent counsel's deficient performance—the outcome or result of the proceedings would have been different. *Id*.; *see also Reed v. Stephens*, 739 F.3d 753, 773 (5th Cir. 2014) (quoting *Strickland*, 466 U.S. at 687)). It is well-settled that a "reasonable probability" is one that is sufficient to undermine confidence in the outcome of the proceedings. *Strickland*, 466 U.S. at 694. Importantly, the petitioner alleging ineffective assistance must show both deficient performance and prejudice. *See Charles v. Stephens*, 736 F.3d 380, 388 (5th Cir. 2013) ("A failure to establish either element is fatal to a petitioner's claim.") (internal citation omitted). Given the already highly deferential standard under the AEDPA, establishing a state court's application whether counsel was ineffective "is all the more difficult." *Harrington v. Richter*, 562 U.S. 86, 105 (2011); *see also Charles*, 736 F.3d at 389 ("Both the *Strickland* standard and the AEDPA standard are highly deferential, and when the two apply in tandem, review is doubly so.") (internal quotations and citation omitted).

## VI. Discussion and Analysis

The Court understands that Gordy is raising claims concerning sufficiency of the evidence supporting his underlying conviction and various claims of ineffective assistance of counsel. The state habeas court entered findings of fact—specifically finding that Gordy's trial counsel, Ms.

LaJuanda T. Lacy, provided effective representation and that his prior convictions were final. Therefore, under the AEDPA, Gordy must show through clear and convincing evidence that the state court's findings were unreasonable or contrary to federal law. For reasons explained below, he has made no such showing.

### 1. Prior Convictions

Gordy first maintains that there was insufficient evidence to support his prior convictions that were used to enhance his underlying sentence. Specifically, he argues that the priors alleged in the indictment—unlawful possession of a firearm by a felon and possession of a controlled substance—were appealed and "no evidence proving prior convictions were final was presented to jury at trial," (Dkt. #1, pg. 6).

He asserts that the punishment range for the underlying offense was impermissibly enhanced to 25 years to life imprisonment as a result of wrongful prior convictions. While he admits that he pleaded "true" to both prior convictions for enhancement, he argues that the State was still required to show that the previous convictions were final. *Id*. at pg. 15.

The state habeas court entered findings of fact and conclusions of law on this claim. In rejecting this claim, the state habeas court found the following:

> At the guilt/innocence phase of trial, the State made a prima facie case that the defendant's prior conviction for unlawful possession of a firearm by a felon in Cause Number 007-0120-10, as alleged in the indictment, was a final conviction. Neither the State nor the defendant offered any evidence at trial showing that this conviction had been appealed and subsequently affirmed.

> During the punishment phase of trial, the defendant pleaded "true" to both of the enhancement paragraphs contained in the indictment, including that he had previously been finally convicted of the offense of delivery of a controlled substance in Cause Number 007-0121-10, as alleged in the second enhancement paragraph. Neither the State nor the defendant offered any evidence at trial showing that this conviction has been appealed and subsequently affirmed.

The defendant's prior convictions for unlawful possession of a firearm by a felon and delivery of a controlled substance, as alleged in the indictment, were in fact affirmed by the Twelfth Court on direct appeal, and mandate issued on 12 July 2011 in each case. *Gordy v. State*, Nos. 12-10-00237-CR, 12-10-00238-CR, 2011 Tex. App. LEXIS 2349 (Tex. App.—Tyler, Mar. 31, 2011, pet. ref'd) (mem. op., not designated for publication). Therefore, the defendant's convictions in Cause Numbers 007-120-10 and 007-121-10 were final before the defendant was indicted in the instant case.

As the prior felony convictions challenged by the defendant in his first and second alleged ground for relief were in fact final convictions, the punishment range for the charged offense was that of a habitual felony offender under section 12.42(d) of the Penal Code, and his sentence was therefore not illegal.

(Dkt. #12, pg. id. #1498).

The state habeas court's findings and conclusion of law are entitled to a presumption of correctness on federal habeas review and Gordy has the burden of overcoming this presumption. *See Carter v. Collins*, 918 F.2d 1198, 1202 (5th Cir. 1990).

Title 28 U.S.C. § 2254(e)(1) provides the following:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Under this statute, then, only one avenue exists in which a federal court can ignore state fact findings: When the petitioner rebuts the presumption of correctness by clear and convincing evidence. Because the court denied relief on the merits of Gordy's claims, he is bound by 28 U.S.C. § 2254 and must show that the state court's adjudication of his claims resulted in a decision which was contrary to or involved an unreasonable application of clearly established federal law—as established by the Supreme Court, or resulted in a decision based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See Rivera v. Quarterman*, 505 F.3d 349, 356 (5th Cir. 2007).

Here, Gordy failed to show that these findings concerning his prior felony convictions were unreasonable or contrary to clearly established law. Under federal precedent, it is well-settled that district courts examining a state conviction on habeas review analyze whether the record adduced at trial shows that no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 324 (1979) ("A review of the record in the light most favorable to the prosecution convinces us that a rational factfinder could readily have found the petitioner guilty beyond a reasonable doubt of first-degree murder under Virginia law."); *see also Wilson v. Rader*, 619 F. App'x 369, 370 (5th Cir. 2015) (Mem) (unpublished) ("The applicable standard for testing the sufficiency of the evidence in a federal habeas review of a state court conviction is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.") (internal citations and quotations omitted).

The United States Court of Appeals for the Fifth Circuit has repeatedly held that an objection to the use of a prior conviction for enhancement purposes "is waived when a plea of guilty is entered to the enhancement charged." *Randle v. Scott*, 43 F.3d 221, 226 (5th Cir. 1995); *see also Sawyer v. Johnson*, 116 F.3d 477, 477 (5th Cir. 1997); *Alejandro v. Stephens*, 2015 WL 1296288, at *13 (S.D. Tex. Mar. 20, 2015) ("In addition, Petitioner waived any challenge to these enhancements by entering 'true' pleas to each of the alleged enhancement paragraphs.").

Here, the record reflects that the State introduced evidence through testimony that Gordy's prior conviction for unlawful possession of firearm by a felon, case number 007-0120-10, was final. Moreover, during the penalty phase, Gordy pleaded "true" to both of his prior convictions—felony retaliation and delivery of a controlled substance—used to enhance his sentence, (Dkt. #12,

pg. id. #853). Gordy's plea of "true" to both enhancement paragraphs foreclose any challenge to their use in enhancing his sentence.

While Gordy insists that his conviction for delivery of a controlled substance was not final, he is incorrect. Gordy's convictions for both delivery of a controlled substance and unlawful possession of a firearm by a felon were affirmed by the appellate court on March 31, 2011, the Court of Appeals mandate issued on July 12, 2011 and the Texas Court of Criminal Appeals dismissed discretionary review on November 16, 2011 rendering the enhancement convictions final prior to Gordy's 2017 indictment for his underlying conviction. Because Gordy pleaded true to both enhancement paragraphs and his convictions were final before his indictment, he failed to demonstrate that the state habeas court's rejection of this claim was unreasonable or contrary to federal law. This claim should be denied.

2. Sufficiency of the Evidence

Next, Gordy asserts that evidence at trial was "factually insufficient" to convict him, as he was not in exclusive possession of the firearm. He maintains that all contraband was found on the passenger's side of the vehicle—and that the passenger claimed ownership of the firearms. As a result, he argues, "[t]he position of the firearm was consistent with the passenger having placed the gun under [the] seat," and that "[t]he firearm and its holster were both found on his [side], the passenger side of the vehicle," (Dkt. #1, pg. 17). Any "resistance," was his "reluctance towards apprehension" because of the outstanding warrant—"not because he possessed a firearm." *Id*.

Gordy further states that the only evidence against him "was the testimony of 3 agents from the fugitive task force" who all testified that he "attempted to flee, that they saw [him] reach into the backseat where the firearm was found and that [he] resisted arrest," (Dkt. #1, pg. 16). He insists that the evidence does not support that he possessed the firearm.

9

The state appellate court addressed this issue in its opinion affirming Gordy's conviction.

In finding that Gordy was in possession of the firearm, the court reasoned as follows:

> Obviously, Gordy was present when the search was conducted, and the vehicle where the pistol was found was enclosed. In addition, there was evidence that Gordy attempted to flee. When Gordy saw the first law enforcement vehicle—unmarked but with blue and red lights flashing and siren sounding—he accelerated, in reverse, and smashed into the law enforcement car. Moreover, he did not immediately comply with officers' instructions to vacate the car, and he resisted their efforts to such an extent that he had to be wrestled to the ground and struck twice before he could be handcuffed.
>
> Also, there was evidence that Gordy as in close proximity to the firearm and had access to it. One pistol was in plain view and was within Gordy's reach. A holster, also in plain view, and within Gordy's reach, was found on the passenger's-side floorboard near the driver's side. An attachment for that holster was found on the driver's-side floorboard. In addition, Gordy made furtive gestures, reaching around to the back seat (where one pistol was found).
>
> Two men, two holsters, and two pistols in one car allow for a reasonable inference that each man was in care, custody, control, or management of at least one pistol. This inference is further supported by the fact that McKinney, the passenger, wore at his waist a holster fitting only the gun nearest where McKinney had sat in the passenger's seat. The second gun—which fit the other holster—was found within Gordy's reach, and an attachment for that second holster was found on the driver's-side floorboard, where Gordy sat. The logical force of the facts in this case supports a reasonable inference that Gordy, a felon, was in possession of a firearm in the time period proscribed by Section 46.04 of the Texas Penal Code.

*Gordy*, 2018 WL 4472222, at *3.

Because the appellate court issued the "last reasoned opinion" on this issue, this Court reviews it to determine whether the denial of this claim was contrary to or an unreasonable application of federal law. *See Langley v. Prince*, 926 F.3d 145, 158 (5th Cir. 2019) ("What matters is the last reasoned state court decision found it persuasive.") (citing *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018) (explaining that federal habeas review of a state conviction "is a straightforward inquiry when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion.")). When the state court issues its decision on the merits in a reasoned

10

opinion, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson*, 138 S.Ct. at 1192.

Here, Gordy has not shown—and the facts do not illustrate—that the state court's rejection of his claim that he did not possess the firearm was contrary to or an unreasonable application of federal law. As mentioned, a claim regarding sufficiency of the evidence is evaluated under the *Jackson* standard; the Supreme Court has elaborated as follows:

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable.

*Coleman v. Johnson*, 566 U.S. 650, 651 (2012). Federal habeas relief on a claim of insufficient evidence is "appropriate only if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Russell v. Lumpkin*, 827 F. App'x 378, 388-89 (5th Cir. 2020) (quoting *West v. Johnson*, 92 F.3d 1385, 1393 (5th Cir. 1996)).

The facts adduced at trial reveal that a rational trier of fact could have found proof of Gordy's guilt beyond a reasonable doubt. In other words, as the state appellate court found, the facts presented at trial support Gordy's conviction for unlawful possession of a firearm by a felon—and this Court will not disturb the state court's findings. A review of the trial transcript confirms the state appellate court's outline of the facts.

Under Texas law, possession is defined as "actual care, custody, control, or management." TEX. PENAL CODE ANN. § 1.07(a)(39) (West Supp. 2017). To prove possession of a firearm,

11

the State must show that the accused (1) exercised actual care, control, or custody of the firearm, (2) he was conscious of his connection to it, and (3) he possessed the firearm knowingly and intentionally." *Williams v. State*, 2020 WL 2059916, at *6 (Tex.App.—Dallas 2020, no pet.) (internal citations omitted). When the firearm is not found on the accused's person, "the evidence must affirmatively link the accused to the firearm." *Hall v. State*, 2019 WL 3773852, at *4 (Tex.App.—Dallas 2019, no pet.). The State may show possession through direct and circumstantial evidence; however, the accused's connection to the firearm must be "more than fortuitous." The *Hall* case outlined the analysis as follows:

> Some factors that may establish a link to a weapon and/or contraband include the following: (1) whether the contraband or weapon was in plain view; (2) the accused's proximity to and the accessibility of the weapon or contraband; (3) whether the accused owned or controlled the place where the contraband or weapon was found; (4) whether the place where the drugs and weapon were found was enclosed; (5) whether the accused was found with a large amount of cash; (6) whether the accused made incriminating statements when arrested; (7) whether the accused attempted to flee; and (8) whether the accused made furtive gestures.

*Id*. at *6. The degree—or the "logical force"—to which the factors, alone or in combination, tend to link the accused to the firearm is critical rather than the number of links present. *Id*.

Here, as the state appellate court found, numerous factors link Gordy to the firearm. The jury heard testimony and evidence that Gordy backed the vehicle at a high rate of speed once law enforcement deployed their lights and sirens. While refusing to comply with law enforcement orders to vacate the vehicle, law enforcement testified to seeing Gordy reach behind him to the backseat towards the passenger's side—where the second pistol was later discovered. *See, e.g.*, *Thomas v. State*, 2018 WL 2027173, at *3 (Tex.App.—Texarkana, 2018, pet. ref'd) (finding that a rational jury could find, beyond a reasonable doubt, that Thomas was a felon in possession of firearm, as "Thomas had been making furtive movements before stopping his truck, and the pistol was found within the area of Thomas' furtive movements.").

12

A second holster fitting the second pistol was found within Gordy's reach on the driver's side and an attachment to the second holster was also discovered on the driver's side. Any one of these several factors—alone or in combination—supports a reasonable inference that Gordy was in possession of a firearm. In other words, these facts link Gordy to the firearm.

Gordy maintains that he was reluctant to comply with the officers' commands because he did not want to be apprehended. The jury was free to consider such alternative explanation to his attempt at evading police. *See Jackson*, 443 U.S. at 326 (explaining that if the record supports conflicting inferences, courts are to presume that the jury resolved those conflicts in favor of the verdict); *see also Tate v. State*, 500 S.W.3d 410, 413 (Tex.Crim.App. 2016) (highlighting that proving guilt beyond a reasonable doubt does not require disproving every conceivable alternatives to a defendant's guilt).

Similarly, the jury heard testimony from McKinney that both weapons discovered in the vehicle were in his possession, not Gordy's possession; however, the jury rejected that argument as well. *See United States v. Layne*, 43 F.3d 127, 130 (5th Cir. 1995) ("It is the jury's 'unique' role to judge the credibility and evaluate the demeanor of witnesses and to decide how much weight should be given to their testimony.").

The bottom line is that a rational jury could find, beyond a reasonable doubt, that Gordy possessed a firearm. The federal inquiry ends there, and these claims should be denied. *See Tate v. State*, 500 S.W.3d 410, 414 (Tex.Crim.App. 2016) ("Although these factors can help guide a court's analysis, ultimately the inquiry remains that set forth in *Jackson* [*v. Virginia*]: Based on the combined and cumulative force of the evidence and any reasonable inferences therefrom, was a jury rationally justified in finding guilt beyond a reasonable doubt?").

3. Claims of Ineffective Assistance of Counsel

As mentioned, Gordy maintains that his trial counsel was ineffective for failing to (1) object to the use of prior convictions, (2) investigate those prior convictions, (3) consult with him, (4) pursue a defense, (5) present an opening statement, (6) interview witnesses, (7) argue mitigating facts, and (8) providing poor cross examinations and closing arguments. He must demonstrate both deficient performance and ensuing prejudice. *Strickland*, 466 U.S. at 687.

a. *Exhaustion of State Court Remedies*

State prisoners filing petitions for a writ of habeas corpus are required to exhaust their state remedies **before** proceeding to federal court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1) (emphasis added). In order to satisfy this exhaustion requirement, a state prisoner must "fairly present" all of his claims to the state court. *See Picard v. Connor*, 404 U.S. 270, 275 (1971). In Texas, all claims must be presented to and ruled upon the merits by the Texas Court of Criminal Appeals. *See Richardson v. Procunier*, 762 F.2d 429, 432 (5th Cir. 1985). Moreover, the Supreme Court held that "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." *Wilder v. Cockrell*, 274 F.3d 255, 259 (2001); *see also Vela v. Estelle*, 708 F.2d 954, 958 n.5 (5th Cir. 1983) (explaining that "where petition advances in federal court an argument based on a legal theory distinct from that relied upon by the state courts, he fails to satisfy the exhaustion requirement.") (internal citations omitted).

The Fifth Circuit has explained that if a state court bases its decision upon the alternative grounds of procedural default and a rejection on the merits, the federal court must, in the absence

of a showing of cause and prejudice, deny habeas relief because of the procedural default. *Hughes v. Dretke*, 412 F.3d 582, 592 (5th Cir. 2005); *Amos v. Scott*, 61 F.3d 333, 341-42 (5th Cir. 1995). When the state court does not review the petitioner's claim on the merits, but rejects the claim based upon an adequate and independent state law ground, the federal court will consider the claim procedurally defaulted. *Muniz v. Johnson*, 132 F.3d 214, 219 (5th Cir.), *cert. denied*, 523 U.S. 1113 (1998). If a procedural default has occurred, federal habeas review of the claim is barred unless the petitioner can show cause for the default and actual prejudice as a result of the alleged violation of federal law, or that a fundamental miscarriage of justice would result from the failure to address his federal claim. *See Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Fundamental miscarriages of justice are limited to cases where the petitioner can make a persuasive showing that he is actually innocent of the charges against him. *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001).

Unexhausted claims in a mixed habeas petition are dismissed as procedurally barred. *See Fearance*, 56 F.3d at 642 ("Accordingly, this court is barred from reviewing the merits of Fearance's forced medication claims: The adequate and independent state ground doctrine "bar[s] federal habeas when a state court decide[s] to address a prisoner's federal claims because the prisoner had failed to meet a state requirement."); *see also Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001) (same). Such unexhausted claims would be procedurally barred because if a petitioner attempted to exhaust the claims in state court, the claims would be barred by the Texas abuse-of-the writ rules. *Fearance*, 56 F.3d at 642.

Here, Gordy's claims of ineffective assistance present a mixed federal petition—as some of his claims are exhausted while others are not. In this state habeas application, Gordy claimed that his trial counsel was ineffective for failing to raise certain points, failing to consult with him,

failing to call a witness, and failing to object, (Dkt. #12, pg. id. #1398-99). Unlike in his federal habeas petition, he did not raise claims concerning the failure to investigate prior convictions, the failure to present an opening statement, failure to pursue a defense, or providing poor cross-examinations and closing arguments.  As a result, he did not present those claims to the highest court in Texas—and they are therefore unexhausted.

The unexhausted claims are procedurally defaulted because if Gordy were to file a successive state habeas application attempting to raise these claims, Texas would apply its abuse-of-the-writ doctrine—a doctrine that prohibits a second habeas application, absent a showing of cause, if the applicant urges claims therein that could have been but were not raised in the first application. *See Coleman*, 501 U.S. at 735 n.1; *see also Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997) (finding that the unexhausted claim, which would be barred by the Texas abuse-of-the-writ doctrine if raised in a successive application, "represents an adequate state procedural bar for purposes of federal habeas review"); *Etheridge v. Johnson*, 209 F.3d 718, 2000 WL 283176, at *7 (5th Cir. 2000) (Table) ("We agree that Etheridge is procedurally barred from raising this unexhausted claim in state courts because of the Texas abuse of the writ doctrine."). Accordingly, Gordy's federal claims regarding counsel's failure to failure to investigate prior convictions, the failure to present an opening statement, failure to pursue a defense, or providing poor cross-examinations and closing arguments are both unexhausted and procedurally defaulted. *See, e.g.*, *Cunningham v. Lumpkin*, 2021 WL 2723591, at *8 (S.D. Tex. June 30, 2021) ("If a petitioner with an unexhausted claim would be barred from returning to state court by Texas' abuse of the writ doctrine, TEX. CODE CRIM. PROC. art. 11.07 § 4, the claim is barred under the federal procedural default doctrine.").

To overcome this federal bar, as mentioned, Gordy must show both cause and actual prejudice as a result of the alleged violation of federal law, or that a fundamental miscarriage of justice would result from the failure to address his federal claim. *Coleman*, 501 U.S. at 750. The "fundamental miscarriage of justice" exception is limited to cases in which the petitioner demonstrates actual innocence. *See Garza v. Stephens*, 738 F.3d 669, 675 n.3 (5th Cir. 2013). Gordy has made no argument for cause and actual prejudice—other than he is innocent of possessing the firearm—and has not shown a fundamental miscarriage of justice and his unexhausted claims are procedurally barred. As explained above, a rational jury could find, beyond a reasonable doubt, that Gordy possessed a firearm.

### b. Exhausted Claims

Gordy's claims that counsel was ineffective for failing to (1) object to the use of prior convictions, (2) investigate his prior convictions, (3) consult with him, and (4) interview witnesses are exhausted. However, they are without merit.

The state habeas court entered findings of fact and conclusions of law concerning Gordy's claims of ineffective assistance of his trial counsel. Because the state court entered findings of fact, the findings are entitled to a presumption of correctness—and Gordy must overcome this presumption by clear and convincing evidence. The state habeas court entered the following:

> The defendant was represented in this case by appointed counsel, LaJuanda T. Lacy, who provided effective assistance. There is no credible evidence before the Court that the defendant's trial counsel provided ineffective assistance for the reasons the defendant has alleged, or that the defendant was harmed by the alleged ineffectiveness of his trial counsel.

Dkt. #12, pg. id. #1499.

Here, Gordy wholly failed to demonstrate, by clear and convincing evidence, that the state habeas court's findings and conclusions were unreasonable or contrary to federal law. Gordy maintains that had trial counsel investigated his prior convictions, she would have discovered that

17

they were not final; however, as explained above, the prior convictions were final before Gordy's trial for this underlying conviction. Moreover, because the convictions were final, counsel cannot be ineffective for failing to object to a meritless issue. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."); *see also United States v. Lopez*, 748 F. App'x 273, 276 (5th Cir. 2018) (unpublished) ("Counsel does not render ineffective assistance by failing to make meritless objections."). Gordy pleaded "true" to both enhancement paragraphs. His plea essentially forecloses challenges to those prior convictions. *Randle*, 43 F.3d at 226.

Turning to Gordy's claim regarding counsel's failure to "consult" with him, the Court notes that this claim is without support. Rule 2(c) of the Rules Governing Section 2254 Proceedings in the United States District Courts states that a habeas petition must:

> (1) specify all of the grounds of relief available to the petitioner; (2) state the facts supporting each ground; (3) state the relief requested; (4) be printed, typewritten, or legibly handwritten; and (5) be signed under penalty of perjury by the petitioner or by a person authorized to sign it for the petitioner under 28 U.S.C. § 2242.

In other words, a habeas petitioner must state specific facts that would, if true, entitled him to relief. *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (explaining that "conclusory allegations do not raise a constitutional issue in a habeas proceeding."); *Gaitan v. Lumpkin*, 2021 WL 4447073, at *1 (5th Cir. 2021) (unpublished) ("This court has made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.") (quoting *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)).

Here, Gordy states that counsel was ineffective for failing to "consult" with him. But he fails to explain what counsel should have consulted with him about or how he was prejudiced or harmed by an alleged lack of consultation. He explains that there "was a breakdown in communication due to the lack of consultation between Applicant and his counsel," (Dkt. #1, pg.

10), but elaborates no further. Without elaboration and his failure to show that he was prejudiced, this claim fails and should be dismissed.

Gordy further maintains that trial counsel was ineffective for failing to interview or call witnesses. As an initial matter, however, complaints of uncalled witnesses are unfavored on federal habeas review because such allegations concerning what a proposed witness would have testified to are largely speculative. *See Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002); *see also Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981) ("Complaints of uncalled witnesses are not favored because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified to are largely speculative.") (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)).

In order to show that counsel was ineffective for failing to call a witness, the petitioner must identify those witnesses and establish, by affidavit or otherwise, what those witnesses would have testified to at trial. *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001). Further, the petitioner must not only show that the witness's proposed testimony would have been favorable, but also that the witness would have actually testified at trial. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).

Similarly, to show that counsel was ineffective for the failure to investigate a witness, a petitioner must state with specificity what the investigation would have revealed and how it would have changed the outcome of the trial. *See Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005). Federal courts are wary of claims such as these, as these claims result in analysis of varying degrees: Did counsel investigate enough? Did counsel present enough mitigating evidence? *See Dowthitt v. Johnson*, 230 F.3d 733, 743 (5th Cir. 2000) ("We must be particularly wary of

arguments that essentially come down to a matter of degrees. ... Those questions are even less susceptible to judicial scrutiny.") (internal citations and brackets omitted).

Here, Gordy failed to overcome these hurdles. He neither identifies a witness nor what the witness would have testified to. Likewise, Gordy failed to explain what an investigation of a witness would have revealed or how it would have changed the outcome of his trial. Gordy merely states that counsel should have "investigated" and "interviewed witnesses." His bare allegations do not invoke constitutional concerns.

Finally, the state court records illustrate that both the state habeas court and the trial court are one in the same. Judge Kennedy presided over both Gordy's underlying trial and his state habeas proceedings. Consequently, the presumption of correctness regarding her findings is especially strong. *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000) ("The presumption is especially strong when the state habeas court and the trial court are one in the same."); *Colburn v. Cockrell*, 37 F. App'x 90, 2002 WL 1021891, at *2 (5th Cir. 2002) ("The presumption of correctness is especially strong where, as here, the trial and the state habeas proceedings occur before the same state judge."). Here, both the trial and the state habeas proceedings occurred before Judge Kennedy, (Dkt. #12, pg. id. # 255; 1449). For all of his federal habeas claims, Gordy failed to show that the state court's adjudication of his claims was unreasonable or contrary to federal law. His petition should be denied.

## VII. Certificate of Appealability

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Instead, under 28 U.S.C. § 2253(c)(1), he must first obtain a certificate of appealability ("COA") from a circuit justice or judge. *Id.* Although Petitioner has not yet filed a notice of appeal, the

court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  To make a substantial showing, the petitioner need only show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  The Supreme Court recently emphasized that the COA inquiry "is not coextensive with merits analysis" and "should be decided without 'full consideration of the factual or legal bases adduced in support of the claims.'" *Buck*, 137 S. Ct. 773 (quoting *Miller-El*, 537 U.S. at 336).  Moreover, "[w]hen the district court denied relief on procedural grounds, the petitioner seeking a COA must further show that 'jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Rhoades v. Davis*, 852 F.3d 422, 427 (5th Cir. 2017) (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 140-41 (2012)).

Here, Gordy failed to present a substantial showing of a denial of a constitutional right or that the issues he has presented are debatable among jurists of reason. He also failed to demonstrate that a court could resolve the issues in a different manner or that questions exist warranting further proceedings.  Accordingly, he is not entitled to a certificate of appealability.

**RECOMMENDATION**

For the foregoing reasons, it is recommended that Gordy's federal habeas petition be dismissed. Specifically, the Court recommends that Gordy's unexhausted claims be dismissed, without prejudice. His exhausted claims, as outlined above, should be dismissed with prejudice. Finally, it is recommended that Petitioner Gordy be denied a certificate of appealability *sua sponte*.

Within fourteen (14) days after the receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations, and, except on the grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 30th day of November, 2022.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE